# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

GREGORY ATWATER,
        Plaintiff,

v.                                     Case No. 19-CV-363

BONNIE L. GUGLER, *et al.*,
        Defendants.

## DECISION AND ORDER

*Pro se* plaintiff Gregory Atwater filed this lawsuit under 42 U.S.C. § 1983. (ECF No. 1.) Magistrate Judge David E. Jones screened the complaint and allowed Atwater to proceed with an Eighth Amendment deliberate indifference claim and a state law negligence claim against various defendants who failed to provide medical care for his broken hand. (ECF No. 12.)

The defendants answered the complaint in September 2019. (ECF Nos. 33-35, 42.) Before the court could enter a scheduling order, the state defendants moved to dismiss the state law negligence claim based on failure to comply with Wisconsin's notice of claim statute. (ECF No. 28.) They also sought partial summary judgment on the deliberate indifference claim based on Atwater's alleged failure to exhaust his administrative remedies. (*Id.*) The remaining defendants also filed motions for summary judgment. (ECF Nos. 54, 68, and 87.) Atwater filed his third motion to appoint counsel on May 18, 2020. (ECF No. 102.) This order resolves the pending motions.

1. **State Defendants' Motion to Dismiss**

    a. *Facts*

    i. Parties

Atwater is a Wisconsin state prisoner. (ECF No. 1, ¶ 5.) He transferred between the Milwaukee Secure Detention Facility ("MSDF"), the Dodge Correctional Institution ("DCI"), and Wisconsin Secure Program Facility ("WSPF") during the time period relevant to this lawsuit. (ECF No. 30, ¶ 1.)

Defendants Prapti Kuber, Beth Dittmann, Bonnie Gugler, and Denise Stelpflug are employees of the Wisconsin Department of Corrections ("DOC"). (*Id.*, ¶¶ 5-7.) Kuber is a doctor at DCI; Dittmann is Health Service Unit ("HSU") manager at DCI; Gugler is a registered nurse at DCI; and Stelpflug is a physical therapist at WSPF. (ECF No. 1, ¶¶ 9-11, 15.)

    ii. Summary of the Allegations in the Complaint

In October 2015 Atwater broke his hand during an assault at MSDF. (ECF No. 1, ¶¶ 18-23.) Since then he has received four different x-rays at three different institutions confirming that his third and fourth metacarpals were fractured. (*Id.*, ¶¶ 21-23, 31-33, 39-41, 55.) The defendants refused to provide medical care for his hand and instead transferred him from institution to institution without proper treatment. (*Id.*, ¶¶ 24-58.) Atwater's fractures eventually healed incorrectly. (*Id.*, ¶¶ 59-60.) His hand is now permanently disfigured. (*Id.*) He continues to have weakness and discomfort in his hand. (*Id.*)

iii. Notice of Claim

On June 14, 2018, Atwater drafted a notice of claim using the Wisconsin Department of Justice standard notice of claim form. (ECF No. 31-1.) Wisconsin's attorney general received the document on July 24, 2018. (ECF No. 30, ¶¶ 2-3.) Atwater alleged that, between October 19, 2015, and October 25, 2016, he did not receive proper medical care for his broken hand at MSDF, DCI, or WSPF. (*Id.*, ¶ 4; *see also* ECF No. 33-1 at 2.) The document specifically mentions Kuber, Dittmann, and "Ms. BL." (ECF No. 33-1 at 2.) Atwater explains that "Ms. BL" means "Ms. Bonnie L. Gugler." (ECF No. 59, ¶ 4.)

b. *Motion to Dismiss Standard*

A motion to dismiss tests the legal sufficiency of the complaint. *Kowalski v. Boliker*, 893 F.3d 987, 997 (7th Cir. 2018). The complaint must allege enough facts that, when accepted as true, "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in favor of the non-moving party. *See Lee v. City of Chi.*, 330 F.3d 456, 459 (7th Cir. 2003). "A motion to dismiss is to be granted only if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Id.* (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46 (1957)).

c. *Analysis*

Wisconsin's notice of claim statute provides that an individual bringing a civil action against a state employee must serve written notice of the claim on Wisconsin's

3

attorney general within 120 days of the event giving rise to the action. *See* Wis. Stat. § 893.82(3); *see also* Wis. Stat. § 893.82(3m)(noting that prisoner-claimants may not bring a civil action against a state employee "until the attorney general denies the claim or until 120 days after the written notice ... is served upon the attorney general, whichever is earlier.") The notice of claim must include "the time, date, location and the circumstances of the event giving rise to the claim for the injury…and the names of persons involved, including the name of the state officer, employee or agent involved." Wis. Stat. § 893.82(3). The notice of claim statute requires strict compliance. *See Taylor v. Syed*, No. 19-CV-299-JDP, 2020 WL 1154785, at *1 (W.D. Wis. Mar. 10, 2020).

Kuber, Dittmann, Gugler and Stelpflug move to dismiss Atwater's state law negligence claim because he did not file his notice of claim until June 2018, almost three years after he broke his hand. Indeed, even using the last date Atwater mentioned in his notice of claim (October, 25, 2016) Atwater missed the 120-day time period by more than a year. Atwater explains that he has continued to have "ongoing" medical issues since October 2016, but the Wisconsin Supreme Court has concluded that the continuing violation doctrine does not apply to Wisconsin's notice of claim statute. *See E-Z Roll Off, LLC v. City of Oneida*, 2011 WI 71, ¶¶ 42-47, 335 Wis. 2d 720, 800 N.W. 2d 421. The Wisconsin Supreme Court explained that the legislature did not intend for governmental entities to be exposed to "indefinite periods of liability" for potential civil violations. *Id.*, ¶ 46.

Accordingly, the court will dismiss Atwater's state law negligence claims against Kuber, Dittmann, Gugler and Stelpflug for failing to comply with Wisconsin's notice of claim statute. *See e.g. Wells v. Govier*, No. 18-CV-693-JDP, 2020 WL 2112271, at *1–2 (W.D. Wis. May 4, 2020) ("So after defendants showed that [the plaintiff] had not strictly complied with the statute's requirements, [the court] was required to grant their motion [to dismiss].")

**2. Defendants' Motions for Summary Judgment**

*a. Facts*

i. Additional Parties

Defendant Thomas Grossman is a doctor employed by Agnesian HealthCare. (ECF No. 53, ¶ 1.) Agnesian has a contract with the DOC to provide medical care to inmates at certain DOC institutions. (*Id.*, ¶¶ 2-3.) Grossman provides his medical care services in the "prison ward" at the Waupun Memorial Hospital. (*Id.*, ¶ 4.)

Defendant Michael Hinz is a radiologist who "independently contracted with a private party [Mobilex] to read radiographic studies." (ECF No. 89, ¶ 9.) Mobilex staff take an inmates' x-rays on-site at DCI. (ECF No. 101, ¶¶ 11-13.) Hinz then reads the x-rays off-site. (ECF No. 89, ¶ 13.)

Defendant Jennifer Kruger is a physical therapist employed by Boscobel Area Health Care. (ECF No. 70, ¶ 1.) Boscobel Area Health Care has a contract with the DOC to provide physical therapy to inmates at certain DOC institutions (*Id.*, ¶¶ 2-3.) Kruger provides her physical therapy services at WSPF. (*Id.*, ¶ 4.)

5

ii. Inmate Complaint #1: DCI-2015-23724

On December 14, 2015, Atwater filed an inmate complaint at DCI about his broken hand. (ECF No. 32-2 at 13.) He stated that he injured his hand at MSDF; an x-ray confirmed that he had two broken bones in his hand; and he still had not received any medical care at either institution. (*Id.*) Atwater noted that MSDF medical staff scheduled him for an orthopedic consultation after seeing his x-ray but someone at DCI cancelled the appointment without providing alternative treatment. (*Id.*) He stated that Kuber eventually gave him a physical at DCI, but she ordered him to take two more x-rays to confirm that his hand was "still" broken. (*Id.*) Atwater wrote multiple HSU requests about severe pain in his hand, lack of mobility, and disfigurement. (*Id.*) Atwater stated that his hand was "unaligned" and that he had a big "hump" in the middle of his hand. (*Id.*) Dittmann did not respond to any of his medical requests. (*Id.*)

iii. Inmate Complaint #2: WSPF-2018-20480

On September 26, 2018, Atwater filed an inmate complaint at WSPF. (ECF No. 32-3 at 8.) The inmate complaint alleged inadequate medical care for his "ongoing broken hand issue." (*Id.*) The complaint states in part:

> I suffered a broken hand on 10-13-15 and have been seeking treatment since then for this on-going issue. Nurses and doctors in MSDF, DCI, and here at WSPF have not provided me the proper treatment or standard of care.

The inmate complaint mentions a "physical therapist" he saw on July 17, 2018. (*Id.*) He also states that he received a printout of a document called "Metacarpal Neck

6

Fractures" in response to an HSU request for information about his hand injury. (*Id*.) The Institution Complaint Examiner ("ICE") rejected this inmate complaint as "untimely" because it was not filed "within 14 days after the occurrence giving rise to the complaint." (ECF No. 32-3 at 6.)

b. *Summary Judgment Standard*

A party is entitled to summary judgment if it shows that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.*

Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To survive a motion for summary judgment a non-moving party must show that sufficient evidence exists to allow a jury to return a verdict in its favor. *Brummett v. Sinclair Broad. Grp., Inc.*, 414 F.3d 686, 692 (7th Cir. 2005).

c. *Analysis*

Gugler, Stelpflug, Grossman, and Kruger seek summary judgment based on Atwater's failure to exhaust administrative remedies before filing this lawsuit. Hinz seeks summary judgment because he is not a state actor.

7

i. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act provides in part that "[n]o action shall be brought with respect to prison conditions under § 1983. . . by a prisoner. . . until such administrative remedies as are available are exhausted." 42 U.S.C §1997e(a). The rule promotes efficiency because claims generally are resolved much faster by an agency than through litigation in federal court. *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). Exhaustion is an affirmative defense and the defendants bear the burden of proving that Atwater failed to exhaust. *See Pavey v. Conley*, 544 F.3d 739, 740–41 (7th Cir. 2008) (citing *Jones v. Bock*, 549 U.S. 199, 216 (2007)).

To properly exhaust administrative remedies prisoners must file their inmate complaints and appeals in the place, at the time, and in the manner that the institution's administrative rules require. *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). "The level of detail necessary in a grievance to comply with the procedure will vary from system to system and claim to claim, but it is the prison's requirements…that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). Wisconsin's Inmate Complaint Review System ("ICRS") requires an inmate pursue "all administrative remedies that the department of corrections has promulgated by rule." Wis. Admin. Code § DOC 310.05.

The inmate must file an offender complaint with the ICE within fourteen calendar days of the event giving rise to the complaint. § DOC 310.09(6). The complaint must "contain only one issue per complaint, and shall clearly identify the issue." § DOC 310.09(1)(e). An inmate complaint "need not lay out the facts, articulate

8

legal theories, or demand particular relief," but it must "alert[] the prison to the nature of the wrong for which redress is sought." *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002).

That said, a prisoner is not required to exhaust administrative remedies if those remedies are not truly available. *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Administrative remedies will be deemed "unavailable" when prison officials do not respond to a properly-filed inmate complaint or when they prevent a prisoner from exhausting through affirmative misconduct, such as denying a prisoner necessary forms, destroying a prisoner's submissions, or requiring steps not mandated by regulation or rule. *See Smith v. Buss*, F. App'x 253, 255 (7th Cir. 2010); *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008); *Kaba*, 458 F.3d at 684; *Dale v. Lappin*, 376 F.3d 739, 742 (7th Cir. 2004); *Strong v. David*, 297 F.3d 646, 649-50 (7th Cir. 2002).

Gugler, Stelpflug, Grossman, and Kruger state that Atwater only filed two inmate complaints regarding his broken hand: one on December 14, 2015, and one on September 26, 2018. They state that neither of the inmate complaints mention Gugler, Stelpflug, Grossman, or Kruger by name. They attach Atwater's Inmate Complaint History Report (*see* ECF No. 31-2) to show that Atwater never filed any inmate complaints against any of these defendants specifically.

Atwater disputes these statements. With respect to Gugler, Atwater states that the December 2015 inmate complaint alleged that someone at DCI cancelled his orthopedic consultation without providing alternative treatment. He argues that he

9

did not need to specifically identify Gugler as that individual to alert the prison to the nature of the wrong for which he sought redress. The court agrees. Atwater's first inmate complaint contained enough information for the prison to investigate and decide whether the decision to cancel Atwater's orthopedic consultation was appropriate given that he'd already had an x-ray showing two fractures. Moreover, Atwater had recently transferred to DCI when he filed the inmate complaint. It's unclear how he should have known the name of the individual responsible for making decisions about medical appointments. The court will deny the motion for partial summary judgment as to Gugler.

With respect to Stelpflug and Kruger, Atwater states that he filed several inmate complaints against these individuals that were not attached as evidence to their motions for summary judgment. Atwater states that he filed at least two inmate complaints about Stelpflug at WSPF, including the "rejected" inmate complaint from September 26, 2018. He states that he filed at least three inmate complaints about Kruger at WSPF, including inmate complaints from June 2018, July 2018, and September 2018. Atwater states that he needs to conduct discovery to retrieve these documents.

The court reviewed Atwater's Inmate Complaint History Report and found at least ten inmate complaints alleging inadequate medical care at WSPF. (*See* ECF No. 31-1 at 2-4.) The "brief summary" of these inmate complaints include allegations of denial of ice, denial of physical therapy, denial of pain medication, delay of off-site medical appointments, denial of HSU appointments, and denial of access to his

10

medical files. (*Id.*) The court agrees that Atwater should be able to retrieve these inmate complaints through discovery to show that he properly exhausted his administrative remedies before filing this lawsuit. Accordingly, the court will deny the motions as to Stelpflug and Kruger.

Atwater appears to concede that he did not file any inmate complaints against Grossman. Atwater states, however, that he was not aware that he had to use the ICRS for non-DOC employees. "An administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *See Ross v. Blake*, 136 S. Ct. 1850, 1859 (2016). "When rules are so confusing that ... no reasonable prisoner can use them, then they're no longer available." *Id*. As one Wisconsin district court recently explained, "[i]f the DOC wants prisoners to exhaust claims against outside medical professionals, they should say so in their prison handbooks or the DOC exhaustion regulations." *Compton v. Cox*, No. 12-CV-837-JDP, 2017 WL 933152, at *7 (W.D. Wis. Mar. 8, 2017); *see also Saddy v. Agnesian Health Care*, No. 13-CV-519-JPS, 2014 WL 4656117, at *2 (E.D. Wis. Sept. 16, 2014). The court agrees. The Wisconsin rules and regulations do not clearly say that inmates must exhaust administrative remedies against outside medical providers through the prison grievance system. Administrative remedies are not "available" when prison officials require steps not mandated by regulation or rule. *See Hernandez v. Dart*, 814 F.3d 836, 842 (7th Cir. 2016). Therefore, the court will deny Grossman's motion for summary judgment.

The court notes that inmates need not file multiple inmate grievances raising the same ongoing medical issue. *See Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir.

11

2013). "Separate complaints about particular incidents are only required if the underlying facts or the complaints are different." *Id*. If Atwater had been filing numerous inmate complaints about his broken hand (as he says he did), it is possible that the ICE improperly "rejected" his September 26, 2018 complaint or that Atwater was not required to file that complaint in the first place. The court can address these issues once it has a complete picture of Atwater's inmate complaint history.

    ii.    <u>Acting Under Color of State Law</u>

"When a plaintiff brings a section 1983 claim against a defendant who is not a government official or employee, the plaintiff must show the private entity acted under the color of state law." *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 823 (7th Cir. 2009). The Court must find a "close nexus between the State and the challenged action" such that the challenged action "may be fairly treated as that of the State itself." *Id.* (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)).

The court examines the "trilateral relationship" between the prisoner, the state, and the private health care provider, which includes: (1) the setting in which the medical care is rendered (i.e., whether the service is provided outside the prison walls); (2) the contractual relationship between the state and the medical care provider (i.e., whether the service was voluntary); and (3) the relationship of the private provider to the prisoner (i.e., whether the private provider is replacing medical care or simply assisting with medical care). *Plymouth*, 577 F.3d at 826. "The ultimate issue in determining whether a person is subject to suit under § 1983 is the

12

same question posed in cases arising under the Fourteenth Amendment: is the alleged infringement of federal rights 'fairly attributable to the State?'" *Id.* (quoting *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982)).

Hinz provides a declaration stating that he does not have a contract with the DOC to care for inmates. Hinz states that he has a contract with a private party (Mobilex) to read x-rays for Mobilex staff. Atwater indicates, however, that Mobilex has a contact with the DOC to provide medical care for inmates. Atwater asks to use discovery to look at the contract between Hinz and Mobilex to determine the nature of the relationship (i.e., whether there is an actual difference between someone who is an "employee" of Mobilex and someone who is a "contractor" of Mobilex such that actions of a "contractor" are not attributable to the state). The court agrees that Atwater should have an opportunity to fully develop the factual record on this point.

Finally, Hinz states that misreading an x-ray on one occasion does not amount to deliberate indifference. *See e.g. Johnson v. Obaisi*, No. 12-CV-3195, 2012 WL 3878599, at *3 (C.D. Ill. Sept. 6, 2012) ("[The defendant's] alleged failure to see a fracture in the first x-rays is not deliberate indifference.") Atwater alleges, however, that a different Mobilex radiologist had already confirmed that he had fractures in his hand at the time Hinz reviewed the x-ray. Thus, Hinz's alleged failure to consult with that radiologist and/or look at the prior results before giving his own diagnosis could amount to deliberate indifference. Accordingly, the court will deny Hinz's motion for summary judgment.

13

### 3. Atwater's Motion to Appoint Counsel

Atwater filed his third motion to appoint counsel. (ECF No. 102.) He raises the same issues he raised in his first and second motions to appoint counsel. (*Id.*) As the court discussed in its previous orders, the court has the discretion in civil cases to recruit counsel for individuals unable to afford counsel. *Navejar v. Iyola*, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. §1915(e)(1); *Ray v. Wexford Health Sources, Inc.*, 706 F.3d 864, 866–67 (7th Cir. 2013). "[D]eciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases.'" *Henderson v. Ghosh*, 755 F.3d 559, 564 (7th Cir. 2014) (quoting *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014)).

In exercising its discretion, the court must consider two things: "(1) 'has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so,' and (2) 'given the difficulty of the case, does the plaintiff appear competent to litigate it himself?'" *Pennewell v. Parish,* 923 F.3d 486, 490 (7th Cir. 2019), (quoting *Pruitt v. Mote*, 503 F.3d 647, 653 (7th Cir. 2007)). To satisfy the first prong, the court must determine that a plaintiff made a good faith effort to hire counsel. *Pickett v. Chicago Transit Authority,* 930 F.3d 869, 871 (7th Cir. 2019). To do so, the plaintiff must show he contacted at least three lawyers and provide the court with (1) the lawyers' names; (2) their addresses; (3) how and when the plaintiff attempted to contact the lawyer; and (4) the lawyers' responses. *Id.*

When considering the second element, the court "must examine the difficulty of litigating specific claims and the plaintiff's individual competence to litigate those claims without counsel." *Pennewell*, 923 F.3d at 490. The court looks at "whether the difficulty of the case, factually, legally, and practically, exceeds the litigant's capacity as a layperson to coherently litigate the case." *Id.* This includes "all tasks that normally attend litigation," such as "evidence gathering, preparing and responding to court filings and motions, navigating discovery, and putting on a trial." *Id.* at 490–491. The court "must consider the plaintiff's literacy, communication skills, education level, litigation experience, intellectual capacity, psychological history, physical limitations and any other characteristics that may limit the plaintiff's ability to litigate the case." *Id.* at 491.

Nothing has changed since Atwater's second motion to appoint counsel. Atwater's communications with the court continue to show that he is capable of litigating without an attorney. Atwater's materials in response to the defendants' motions for summary judgment provided a factual basis for his arguments and presented sophisticated analyses (including the use of rules and case law) in support of those arguments. As the case progresses, if the legal and factual issues become too complex for him, or if he is unable to get the information he believes he needs to prove his claims, he may again raise his request for a lawyer. Atwater is reminded that he may request additional time to prepare documents or meet other deadlines. The court also may hold a hearing in the future, if needed, to determine if Atwater's hand injury

prevents him from litigating this matter on his own. Therefore, the court will deny his third motion to appoint counsel without prejudice.

4. Conclusion

**IT IS THEREFORE ORDERED** that the state defendants' motion to dismiss and motion for partial summary judgment (ECF No. 28) is **GRANTED in part** and **DENIED in part**. The motion to dismiss is **GRANTED** and Atwater's state-law negligence claims against defendants Kuber, Dittmann, Gugler, and Stelpflug are **DISMISSED**. The motion for partial summary judgment is **DENIED**.

**IT IS ORDERED** that defendant Grossman's motion for summary judgment (ECF No. 54) is **DENIED**.

**IT IS ORDERED** that defendant Kruger's motion for summary judgment (ECF No. 68) is **DENIED**.

**IT IS ORDERED** that defendant Hinz's motion for summary judgment (ECF No. 87) is **DENIED**.

**IT IS ORDERED** that Atwater's motion to appoint counsel (ECF No. 102) is **DENIED** without prejudice.

Dated at Milwaukee, Wisconsin this 16th day of June, 2020.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge