UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

GREGORY ATWATER,

        Plaintiff,

v.                                       Case No. 19-CV-363

DR. PRAPTI KUBER and
DR. MICHAEL HINZ,

        Defendants.

## DECISION AND ORDER

Plaintiff Gregory Atwater, who is represented by counsel and confined at Racine Correctional Institution, brings this lawsuit under 42 U.S.C. § 1983. Atwater was allowed to proceed on several claims, but only the Eighth Amendment deliberate indifference claims and state law medical malpractice/medical negligence claims against defendants Dr. Prapti Kuber and Dr. Michael Hinz remain.

On June 16, 2020, the court issued an order that, among other things, dismissed Atwater's state law negligence claims against Dr. Kuber and three other defendants. (ECF No. 106.) Dr. Kuber and Dr. Hinz subsequently moved for summary judgment on the remaining claims. (ECF Nos. 149, 163.) In addition to responding to these motions, Atwater moved for reconsideration of the dismissal of the state law medical malpractice/medical negligence claim against Dr. Kuber. (ECF No. 181.) The court reinstated the medical malpractice/medical negligence claim against Dr. Kuber and allowed her to file a renewed motion for summary judgment. (ECF No. 196.) The court

withheld ruling on Dr. Hinz's motion for summary judgment until Dr. Kuber's motion for summary judgment was fully briefed. Dr. Kuber then filed a renewed motion for summary judgment. (ECF No. 197.) Both Dr. Kuber's and Dr. Hinz's motions are fully briefed and ready for a decision. The parties have consented to the jurisdiction of a magistrate judge. (ECF Nos. 6, 15, 19.)

## FACTS

The following facts are taken in the light most favorable to the non-movant, plaintiff Gregory Atwater. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). On October 13, 2015, Atwater was in an altercation with another inmate at the Milwaukee Secure Detention Facility (MSDF) and injured his right hand. (ECF No. 206, ¶ 1.) On October 19, 2015, MobilexUSA, a mobile radiology company, took x-rays of Atwater's hand. (*Id.*, ¶ 2.) The radiology report indicated that the x-rays showed fractures in Atwater's third and fourth metacarpal bones in his hand. (*Id.*, ¶¶ 2, 5.) MSDF nursing staff scheduled a consultation with an orthopedic specialist, but that appointment was cancelled for unknown reasons. (*Id.*, ¶¶ 6-7.) On October 23, 2015, Atwater was transferred to Dodge Correctional Institution (Dodge). (*Id.*, ¶ 8.)

Once Atwater arrived at Dodge, he complained of pain in his hand and was scheduled to see defendant Dr. Prapti Kuber, a physician employed at Dodge. (ECF No. 206, ¶ 9.) On October 28, 2015, Dr. Kuber examined Atwater. (*Id.*, ¶ 11.) Before the appointment, Dr. Kuber reviewed the MSDF transfer form, which indicated that Atwater had fractures in his third and fourth metacarpal bones. (*Id.*, ¶ 12.) The report

also noted that Atwater had been scheduled to see an orthopedic specialist but that the appointment was canceled. (*Id.*) Dr. Kuber's notes from the October 28 appointment acknowledged Atwater's fractures and stated that his hand was x-rayed on October 19. (*Id.*, ¶ 14.) Dr. Kuber ordered a "repeated" x-ray to confirm the diagnosis. (*Id.*, ¶ 15.) She also prescribed Atwater 600 mg of ibuprofen. (ECF No. 201, ¶ 8.)

On October 30, 2015, Atwater's hand was again x-rayed by MobilexUSA. (ECF No. 206, ¶ 17.) This time, however, only two views of Atwater's hand were captured, unlike the three views captured in the October 19 x-ray. (ECF No. 190, ¶ 23.) Defendant Dr. Michael Hinz, a diagnostic radiologist for MobilexUSA, reviewed Atwater's October 30 x-rays and prepared a radiology report. (*Id.*, ¶ 22.) In the radiology report Dr. Hinz stated that "[n]o fracture or dislocation is seen." (*Id.*, ¶ 23.) Dr. Hinz further asserts that he reviewed Atwater's x-rays without the benefit of having seen any prior reports, images, x-rays, or history. (*Id.*, ¶ 22.)

Dr. Kuber reviewed Dr. Hinz's radiology report and determined that, because it indicated there was no fracture, Atwater did not need any additional care for his hand beyond the ibuprofen he was given at the October 28 appointment. (ECF No. 201, ¶¶11, 13.) She did not communicate the x-ray results to Atwater. (ECF No. 206, ¶ 18.)

On December 8, 2015, Atwater submitted a Health Services Request (HSR) asking about his October 30 x-ray results and stating that he had developed "a big lump in [his] hand," could not properly move his fingers, and that his fingers were misaligned. (ECF No. 201, ¶ 14; ECF No. 206, ¶ 20.) On December 10, 2015, Dr. Kuber

3

responded to Atwater's HSR, informing him that his x-ray did not show any fractures or dislocations and that no further care was required. (ECF No. 201, ¶ 15.) She also told him that he could seek additional care or address further concerns when he transferred to his next institution[1]. (*Id.*)

Sometime between December 14 and December 18, 2015, Atwater submitted an inmate complaint regarding the lack of medical treatment for his hand. (ECF No. 206, ¶ 25.) After Atwater submitted his inmate complaint, Dr. Kuber's supervisor, Dr. Scott Hoftiezer (not a defendant), became aware of Atwater's situation and reviewed his medical records. (*Id.*, ¶ 26.) Hoftiezer reviewed both the October 19 x-rays and the October 30 x-rays and "observed that Atwater's hand fractures were plainly visible" but conceded that he could see the fractures on the October 30 x-rays only because he had previously viewed the October 19 x-rays. (*Id.*) Hoftiezer then emailed MobilexUSA, noting that Dr. Hinz "made no mention of the fracture [even though] I can see the fracture" and asked whether the x-ray should have been reviewed by another radiologist. (*Id.*, ¶ 27.) Hoftiezer also instructed Dr. Kuber to reexamine Atwater and discussed her management of Atwater's case up to that point. (*Id.*, ¶ 28.)

Dr. Kuber reexamined Atwater on December 21, 2015, when she ordered a third set of x-rays. (ECF No. 206, ¶¶ 29-30.) An x-ray was taken that same day. (*Id.*, ¶ 31.) Before having a radiologist read the x-ray, Dr. Kuber told Atwater that she could see the fractures in his hand and that they were obvious. (*Id.*, ¶ 32.) Hoftiezer referred

---

[1] While none of the parties explain this comment, the court presumes it is a reference to the fact that Dodge is the facility where newly-convicted inmates first go upon entry into the Wisconsin Department of Corrections system, and as such stays at Dodge are typically brief before transferring to another correctional facility within the DOC.

4

Atwater to an orthopedic specialist, Dr. Thomas Grossman (not a defendant). (*Id.*, ¶ 36.) On December 23, 2015, Grossman physically examined Atwater's hand and had it x-rayed again. (*Id.*, ¶¶ 37-38.) Dr. Grossman determined that Atwater had "healed fractures" in his right hand and therefore could not use therapies to mitigate deformities or future pain. (*Id.*, ¶¶ 38-39.) Dr. Grossman also told Atwater that his doctors waited "too long to help". (*Id.*, ¶ 40.)

Atwater asserts his fractures did not heal properly. (ECF No. 206, ¶ 42.) He states that his hand is permanently disfigured, and he continues to experience weakness and discomfort in his hand. (*Id.*) He also had to engage in physical therapy for over a year. (*Id.*, ¶ 43.)

Once Atwater's December 21 x-rays came back showing his hand was broken, Dr. Hinz added an addendum to his evaluation of the October 30 x-rays. (ECF No. 190, ¶ 34.) In his addendum Dr. Hinz revised his findings to note that there may have been "a possible fracture of one of the metacarpals" in Atwater's hand but that "oblique views" (side views) are recommended for further evaluation. (*Id.*, ¶ 35.) Dr. Hinz states that he had additional information available for him when he wrote his addendum that he did not have when he wrote his original report. (*Id.*)

## SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are

5

those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment a party cannot just rely on his pleadings but "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## ANALYSIS

*Eighth Amendment Deliberate Indifference Claim Against Dr. Hinz*

Atwater claims that Dr. Hinz, in erroneously reading the October 30 x-ray, violated his Eighth Amendment rights because he was deliberately indifferent to Atwater's objectively serious medical need. Dr. Hinz does not address the substance of

6

Atwater's claim but instead argues that Atwater cannot, as a matter of law, establish an Eighth Amendment claim because he failed to timely disclose expert witnesses. The court's amended scheduling order gave Atwater until August 2, 2021, to disclose expert witnesses or file a letter indicating that no expert witnesses were necessary. (ECF No. 130.) Atwater did neither.

However, the court does not need to reach the question of whether Atwater's failure to secure an expert defeats his deliberate indifference claim because even taking Atwater's facts as unopposed, no reasonable factfinder could conclude that Dr. Hinz was deliberately indifferent. It is undisputed that Dr. Hinz was unaware of the October 19 x-ray and did not have access to Atwater's medical records when he analyzed the October 30 x-ray. Atwater has not presented any evidence suggesting that Dr. Hinz had a duty to find out whether there were any prior x-rays or to attempt to obtain Atwater's medical records. Dr. Hinz misread Atwater's x-ray on one occasion. Misreading or misinterpreting an x-ray on one occasion without more does not rise to the level of deliberate indifference. *See Doughty v. Bryan*, Case No. 16-CV-49, 2016 WL 1089265 at *3 (E.D. Wis. Mar. 16, 2016) (finding that misinterpreting an x-ray on one occasion is at most medical malpractice); *Johnson v. Corizon Medical Servs. Inc.*, Case No. 1:14-cv-49, 2015 WL 1730201 at * 2 (S.D. Ind., Apr. 14, 2015) (finding that misinterpreting an x-ray "on one occasion would amount merely to negligence, not deliberate indifference"); *Morris v. Rector*, Case No. 13-cv-1139, 2013 WL 6267527 at *4 (S.D. Ill., Dec. 3, 2013) (finding that a doctor misreading an x-ray "would only be negligence or malpractice, not rising to the level of deliberate indifference").

7

The court notes that Dr. Hinz previously filed a motion for summary judgment in which he argued that, as a matter of law, he could not be deliberately indifferent for misreading an x-ray on one occasion. (ECF No. 88 at 6-7.) The court denied that motion in part because Atwater had alleged that Dr. Hinz knew about the October 19 x-rays and disregarded them. (ECF No. 106 at 13.) But that apparently was untrue: Hinz did not know about the October 19 x-rays. There are no extenuating circumstances causing Dr. Hinz's onetime misreading of an x-ray to rise to the level of deliberate indifference. Therefore, summary judgment on the Eighth Amendment claim against Dr. Hinz is granted.

*Eighth Amendment Deliberate Indifference Claim Against Dr. Kuber*

Atwater claims that Dr. Kuber violated his Eighth Amendment rights when she failed to question Dr. Hinz's radiology report and failed to treat his hand for six weeks. A prison official violates the Eighth Amendment when she is deliberately indifferent "to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "To state a cause of action, a plaintiff must show (1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent." *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008). Dr. Kuber does not contest that Atwater suffered an objectively serious medical need. (*See* ECF No. 206, ¶ 44.)

A prison official is deliberately indifferent to that serious medical need when she "*actually* knew of and disregarded a substantial risk of harm." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (emphasis in original). The plaintiff "must show more than mere evidence of malpractice." *Id*. The plaintiff must show that the prison

8

official's actions "were so 'significant a departure from accepted professional standards or practices' that it is questionable whether they actually exercised professional judgment." *Stallings v. Liping Zhang*, 607 Fed. Appx. 591, 593 (7th Cir. 2015) (quoting *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014)).

A genuine issue of material fact exists as to whether Dr. Kuber's failure to question the results of the October 30 x-rays and failure to communicate those results to Atwater until Atwater asked about them nearly six weeks later amounts to deliberate indifference. It is undisputed that, before receiving the October 30 x-rays, Dr. Kuber had access to the MSDF transfer report, which indicated that Atwater had fractures in his third and fourth metacarpal bones, and that Atwater had been slated to see an orthopedic specialist. Her notes from her October 28 examination of Atwater also show that she was aware that someone had previously determined that Atwater's hand had been broken and that he had already received an x-ray on October 19.

A reasonable factfinder could conclude that Dr. Kuber was deliberately indifferent to the substantial risk posed by Atwater's broken hand. If a plaintiff "puts forth sufficient evidence to permit a reasonable jury to conclude that [a doctor's] 'inaction substantially and unreasonably delayed necessary treatment,' then he has done enough to withstand summary judgment." *Conley v. Birchey v. Birch,* 796 F.3d 742, 747 (7th Cir. 2015) (quoting *Ortiz v. Webster*, 655 F.3d 731, 734 (7th Cir. 2011)). Once Dr. Kuber received the results of the October 30 x-rays, which were inconsistent with the information in Atwater's MSDF transfer form, she did not question the results. Moreover, for reasons not explained in the record, she did not timely

9

communicate the results to Atwater. When Atwater informed her on December 8 that his condition was worsening, instead of immediately scheduling an appointment Dr. Kuber told Atwater that the x-ray indicated no fractures and that no further medical care was needed.

Upon learning that his x-ray did not indicate a fracture and that Dr. Kuber did not plan on further treating him, Atwater filed an inmate complaint in an effort to get medical attention. By the time he was reexamined by Dr. Kuber and referred to Dr. Grossman, Atwater's fractures had healed improperly. A reasonable jury could conclude that Dr. Kuber's unexplained decision not to question or disclose the results of the October 30 x-rays to Atwater caused an unreasonable delay in necessary treatment.

Dr. Kuber argues that, even if the court finds a question of material fact as to whether she was deliberately indifferent, she is entitled to qualified immunity. To determine whether qualified immunity applies, the court must consider "(1) whether the defendants violated a constitutional right, and (2) whether the constitutional right was clearly established." *Broadfield v. McGrath*, 737 Fed. Appx. 773, 775 (7th Cir. 2018).

As discussed above, the court has already determined that a reasonable factfinder could conclude that Dr. Kuber was deliberately indifferent to Atwater's broken hand. The only remaining question is whether the rights Dr. Kuber may have violated were clearly established. Dr. Kuber presents no argument as to why she is entitled to qualified immunity. Instead, she states that "[i]t is Plaintiff's burden to

10

show the clarity in the law, not Dr. Kuber's burden to show lack of clarity. Dr. Kuber need only raise the issue; it is Plaintiff's burden to identify controlling precedent from the Supreme Court or the Seventh Circuit Court of Appeals putting it beyond debate to a person in Dr. Kuber's position that she was violating a reasonably specific right." (ECF No. 198 at 11.)

It was well established in October 2015 that delaying treatment of a broken bone could amount to deliberate indifference. *See Grieveson v. Anderson*, 538 F.3d 763, 779 (7th Cir. 2008) (reversing summary judgment for defendants where treatment of plaintiff's broken nose was significantly delayed); *Conley*, 796 F.3d at 747-749. Because it was clear that delaying treatment of an inmate's broken bone constitutes deliberate indifference to an objectively serious medical need, Dr. Kuber is not entitled to qualified immunity. As a result, Dr. Kuber's motion for summary judgment on Atwater's Eighth Amendment claim for deliberate indifference is denied.

*State Law Negligence Claims Against Dr. Kuber and Dr. Hinz*

Both Dr. Kuber and Dr. Hinz argue that the court should dismiss Atwater's state law medical negligence/medical malpractice claim because he failed to disclose any expert witnesses to testify to the relevant standard of care required. "Wisconsin law requires that an expert witness testify to establish the standard of care in a medical malpractice case, unless 'the situation is one where the common knowledge of laymen affords a basis for finding negligence.'" *Wilson v. Adams*, 901 F.3d 816 (7th Cir. 2018) (quoting *Christianson v. Downs*, 90 Wis. 2d 332, 279 N.W.2d 918, 921 (1979)). Although it is undisputed that Atwater did not obtain an expert witness, he

11

argues that his injuries were so obvious that the situation is one where a layperson could determine that both doctors' care fell outside of the bounds of what was appropriate. Here, it would not be obvious to a lay person that Dr. Hinz's misreading of an x-ray violated the applicable standard of care or that Dr. Kuber's failure to question Dr. Hinz's conclusions from the October 30 x-rays, or her failure to inform Atwater about what they showed, amounted to negligence or malpractice. Atwater's state law claims against both Dr. Hinz and Dr. Kuber are dismissed. Because there are no remaining claims against Dr. Hinz, he is dismissed.

## CONCLUSION

For the foregoing reasons, Dr. Hinz's motion for summary judgment is granted and Dr. Hinz is dismissed. Dr. Kuber's motion for summary judgment is granted in part and denied in part. The court grants summary judgment on the state law medical negligence/medical malpractice claim. The court denies summary judgment on the Eighth Amendment deliberate indifference to medical needs claim. Because Atwater's Eighth Amendment claim against Dr. Kuber survives summary judgment, the court will schedule a conference to discuss further proceedings.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that Dr. Hinz's motion for summary judgment (ECF No. 163) is **GRANTED**. Dr. Hinz is **DISMISSED** from the case.

**IT IS FURTHER ORDERED** that Dr. Kuber's renewed motion for summary judgment (ECF No. 197) is **GRANTED in part and DENIED in part**.

**IT IS FURTHER ORDERED** that a telephonic status conference be scheduled to discuss next steps.

Dated at Milwaukee, Wisconsin this 16th day of August, 2022.

BY THE COURT

WILLIAM E. DUFFIN
United States Magistrate Judge